UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC, | No. C 14-80112 JSW (LB) |
| Petitioner, | **ORDER REGARDING CALLWAVE AND LOCATION LABS' JOINT DISCOVERY DISPUTE LETTER DATED FEBRUARY 6, 2015** |
| v. | |
| WAVEMARKET, INC. D/B/A LOCATION LABS, | [Re: ECF No. 63] |
| Respondent. | |

## INTRODUCTION

In this miscellaneous action, Petitioner Callwave Communications, LLC ("Callwave") originally asked this court to compel Respondent Wavemarket, Inc. d/b/a Location Labs ("Location Labs"), a non-party to underlying litigation in the United States District Court for the District of Delaware,[1] to comply with Callwave's subpoena for certain documents. (*See* Petition, ECF No. 1.[2]) After many months and several discovery disputes, production has begun. Now, however, the parties ask the

---

[1] The subpoena was issued in *Callwave Communications LLC v. AT&T Inc., AT&T Mobility, LLC, and Google, Inc.*, No. 12-cv-1701 (D. Del.). In its motion, Callwave states that it is the plaintiff in five related patent infringement cases being heard in the District of Delaware and that Location Labs possesses materials that are relevant to at least two of them. *See* Petition, ECF No. 1 at 5, 7.

[2] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

ORDER
C 14-80112 JSW (LB)

court determine whether Location Labs should be ordered to produce the six documents that it identified on the privilege log that it provided to Callwave on January 20, 2015. (2/6/2015 Joint Letter, ECF No. 63 at 1.) The court's answer is "no."

## STATEMENT

This miscellaneous action relates to five patent infringement actions (the "Underlying Litigation") that currently are pending in the United States District Court for the District of Delaware in which Callwave claims that one of its patents (U.S. Patent No. 6,771,970 (the "'970 Patent") was infringed. (*See* 5/5/2014 Joint Letter, ECF No. 17 at 1.) According to Callwave, Location Labs provides some of the defendants to the Underlying Litigation with customized software for locating mobile devices, which Callwave says is the infringing functionality in the defendants' products. (*Id.*) One of the defendants to the Underlying Litigation is AT&T.

On January 20, 2015, Location Labs provided Callwave with a privilege log. (2/6/2015 Joint Letter, ECF No. 63 at 1-2 & Ex. D (privilege log).) It lists six documents. (*Id.*, Ex. D.) For five of the documents, Location Labs asserts that the documents are protected from disclosure under the attorney work-product doctrine and the common interest doctrine. (*Id.*, Ex. D.) For the sixth document, Location Labs asserts that it is protected from disclosure under the attorney work-product doctrine, the common interest doctrine, and the attorney-client privilege. (*Id.*, Ex. D.) Callwave argues that Location Labs's assertions are without merit. (*See id.* at 2-3.)

## ANALYSIS

**I. THE COURT APPLIES FEDERAL LAW TO THIS DISPUTE**

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Federal Rule of Evidence 501); *see Heathman v. United States District Court*, 503 F.2d 1032, 1034 (9th Cir. 1974) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege."). Federal law applies to privilege-based discovery disputes involving federal claims, even if allied with by pendent state law claims. *See*, *e.g.*, *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 687 (E.D. Cal.

UNITED STATES DISTRICT COURT
For the Northern District of California

1993); *Martinez v. City of Stockton*, 132 F.R.D. 677, 681-83 (E.D. Cal. 1990). Because this miscellaneous action is an outgrowth of the five federal law-based patent infringement actions pending in the District of Delaware, the court applies federal law when resolving the parties' dispute.

**II. THE SIXTH DOCUMENT IS NOT PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE**

Location Labs asserts that the sixth document is protected from disclosure under the attorney-client privilege. Location Labs describes the document on its privilege log as a chain of emails among AT&T's outside counsel, AT&T's in-house counsel, and Location Labs's outside counsel regarding "indemnification/defense and issues related thereto." (2/6/2015 Joint Letter, ECF No. 63, Ex. D.) AT&T's outside counsel (Chad Rutkowski Jacqueline Lesser, and Michelle Miller) and AT&T's in-house counsel (Brian Gaffney) are listed as the authors of the communications, and Location Labs's outside counsel (Imran Khaliq, Mark Hogge, and Shailendra Maheshwari) are listed as the recipients of the communications. (*Id.*, Ex. D.)

Location Labs says in its section of the parties' joint letter that the document is protected under the attorney-client privilege because it "involve[s] matter[s] confidentially disclosed between an attorney and client" and that Callwave "does not and cannot dispute this." (*Id.* at 4.) This is not correct. In its section of the letter, Callwave clearly argues (albeit in a footnote) that the document is not privileged because there is no attorney-client relationship between AT&T and Location Labs's counsel, or between AT&T's counsel and Location Labs. (*Id.* at 2 n.1.)

In any event, the court finds that Location Labs has not met its burden to show that the document is protected. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication.") (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). "The party asserting the privilege bears the burden of proving each essential element." *Id.* at 608 (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir.2000), *superseded on other grounds as stated in United States v. Van Alstyne*, 584 F.3d 803, 817 (9th Cir. 2009)).

Under this standard, Location Labs's simple statement that the document is protected under the attorney-client privilege because it "involve[s] matter[s] confidentially disclosed between an attorney and client" clearly is insufficient, and Callwave's point about the lack of an attorney-client relationship is well-taken. Accordingly, the court finds that Location Labs did not establish that the sixth document listed on its privilege log is protected under the attorney-client privilege. Whether it is protected as attorney work product is discussed below.

## III. THE DOCUMENTS ARE SUBJECT TO THE ATTORNEY WORK-PRODUCT DOCTRINE

Location Labs also asserts that all six of the documents listed on its privilege log—including the sixth document discussed above—are protected from disclosure under the attorney work-product doctrine. As the party asserting the privilege, Location Labs has the burden of establishing that it applies to these documents. *See Skynet Elec. Co. Ltd. v. Flextronics Int'l, Ltd.*, No. C 12–06317 WHA, 2013 WL 6623874, at *2 (N.D. Cal. Dec. 13, 2013) ("Where a party asserts work-product immunity over a piece of evidence, the proponent of the privilege bears the burden of establishing its applicability to the present circumstances.") (citing *P. & B. Marina, Ltd. v. Logrande*, 136 F.R.D. 50, 53-54 (E.D.N.Y. 1991)). The attorney work-product doctrine is incorporated into Federal Rule of Civil Procedure 26(b)(3)(A), which states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by of for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *See also In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004) (quoting *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The plain language of Rule 26

limits the scope of the attorney work-product doctrine to documents and tangible things, not the underlying facts.

The Ninth Circuit has adopted the "because of" standard for determining whether a document was prepared "in anticipation of litigation." *See In re Grand Jury Subpoena*, 357 F.3d at 907. More specifically,

> a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, FED. PRACTICE & PROC. § 2024 (2d ed. 1994). . . . The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]" [*United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)].

*Id.* at 907-08. In making this "totality of the circumstances" inquiry, courts must look at whether the documents were created for dual purposes, e.g., both litigation and business purposes. "When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." *Id.* at 908. But "[d]ocuments prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protectable as work product." *Arfa v. Zionist Org. of Am.*, CV 13–2942 ABC SS, 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014) (quoting *Umpqua Bank v. First American Title Ins. Co.*, 2011 WL 997212, at *4 (E.D. Cal. Mar. 17, 2011)).

Callwave argues that Location Labs has not shown that the documents are protected under the attorney work-product doctrine because Locations Labs has not shown that "the documents contain the 'mental impressions, conclusions, opinions, or legal theories of a party's attorney.'" (2/6/2015 Joint Letter, ECF No. 63 at 2 (quoting Fed. R. Civ. P. 26(b)(3)(B)). On the privilege log, Location Labs describes the documents as letters or emails between AT&T's outside counsel and Location Labs's outside counsel regarding "indemnification/defense and issues related thereto." (*Id.*, Ex. D.) And in its section of the parties' joint letter, Location Labs says that "[a]ll of the documents are

subject to the work[-]product doctrine because they involve matters discussed between counsel for defense in on-going litigation." (2/6/2015 Letter, ECF No. 63 at 4.) Although Location Labs did not state that the documents "were created in anticipation of" or "because of" the Underlying Litigation, the court believes that this point is implied in this context, where AT&T is a defendant to the Underlying Litigation and where Location Labs and AT&T apparently have agreed to indemnification in relation to it. The court finds that Location Labs has met its burden to show that the documents are subject to the attorney work-product doctrine. Whether Location Labs has waived the protection of the attorney work-product doctrine is discussed below.

## IV.  UNDER THE COMMON INTEREST DOCTRINE, LOCATION LABS DID NOT WAIVE THE PROTECTIONS OF THE ATTORNEY WORK-PRODUCT DOCTRINE

The parties focus most of their arguments on whether Location Labs waived the protection of the attorney work-product doctrine by sharing the documents with AT&T's outside counsel. Location Labs argues that, under the common interest doctrine, it did not waive the protection because it has a common interest with AT&T in defending against the Callwave's claims in the Underlying Litigation.

The common interest doctrine is not a privilege in and of itself, but rather serves as an exception to waiver of the attorney-client or attorney work product privilege. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege")).[3] Because the common interest privilege "is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance." *Id.*

---

[3] In their letter, the parties refer to the common interest "privilege" rather than the common interest "doctrine." The court prefers the term "doctrine." Although some courts have referred to it as a privilege, other courts have made clear that the doctrine is not a privilege, but instead is an exception to general rules that the attorney-client privilege is waived if the attorney-client communications are made in the presence of, or shared with, third-parties, and that the work-product privilege is waived by disclosure to third parties which results in disclosure to an adversary party. *See*, *e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).

ORDER
C 14-80112 JSW (LB)

6

For the common interest doctrine to apply, the party asserting the privilege must show: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *See Bergonzi*, 216 F.R.D. at 495 (citing *In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)). "The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Bergonzi*, 216 F.R.D. at 495 (quoting *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975)). The parties, however, must have "a common legal, as opposed to commercial, interest." *Nidec*, 249 F.R.D. at 579 (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995)). "[I]t [also] is clear that no written agreement is required, and that a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).

Here, Location Labs says that it shares with AT&T a common interest "in a joint defense against the allegations by Callwave." (2/6/2015 Joint Letter, ECF No. 63 at 4.) It says that it and AT&T, "a licensee and licensor, had a common interest in defending against the claims of Callwave, extending to any indemnification provided, and it is precisely these matters of common interest that were discussed in the documents at issue." (*Id.* at 5.) The court agrees. First, both Location Labs and AT&T have an interest in defeating Callwave's claims of patent infringement in the Underlying Litigation. That they also have negotiated possible indemnification with respect to those claims does not necessarily cancel that out. (*See Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*, No. CV 07-1675(ERK)(VVP), 2009 WL 3786210, at *3-4 (E.D.N.Y. Nov. 12, 2009).) Second, according to Location Labs, the documents reflect its and AT&T's efforts to further their common interest. Third, Location Labs has not waived the protections of the attorney work-product doctrine, as Callwave has not gained access to the documents. *Pecover v. Elec. Arts Inc.*, No. C08-2820 CW (BZ), 2011 WL 6020412, at 1 (N.D. Cal. Dec. 2, 2011)("Work product protection is waived where disclosure of the otherwise protected document is made to a third party, and that disclosure enables an adversary to gain access to the information.")(citing *McMorgan & Co. v. First Cal. Mortg.*, 931

F. Supp. 703 (N.D. Cal. 1996)).  Because all three requirements are met, the court concludes that all six documents are protected from disclosure as attorney work product and that, under the common interest doctrine, Location Labs did not waive that protection.

## V. CALLWAVE HAS NOT MET ITS BURDEN TO SHOW THAT IT HAS A SUBSTANTIAL NEED FOR THE DOCUMENTS

Finally, Callwave argues that it should still gain access to the "facts" contained in the documents because it has a "substantial need" for them.  One district court recently has explained when the protections of the attorney work-product doctrine may be overcome:

> Even if certain materials qualify as work product, they may still be discovered under certain circumstances.  There are two types of work product, which entail two different standards for discovery.  *See Arfa*, 2014 WL 815496, at *4.  "Ordinary" work product includes "raw factual information" while "opinion" work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 628 (N.D. Iowa 2000); Fed. R. Civ. P. 26(b)(3)(B)); *Caremark*, 195 F.R.D. at 616.  Ordinary work product may be discovered if the party seeking the discovery demonstrates a "substantial need" for the materials and there is no other means for obtaining that information without undue hardship.  Fed. R. Civ. P. 26(b)(3); *Hickman*, 329 U.S. at 511.  In contrast, opinion work product enjoys stronger protection, and it may be discovered only "when mental impressions are at issue in a case and the need for the material is compelling."  *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981))("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.").

*Hooke v. Foss Maritime Co.*, Case No. 13-cv-00994-JCS, 2014 WL 1457582, at *2 (N.D. Cal. Apr. 10, 2014).  Callwave posits that the documents likely contain facts (*i.e.*, ordinary work product), and not mental impressions, relevant to the issue of whether Location Labs is in privity with AT&T.  (Whether Location Labs and AT&T are in privity is important to Callwave because, if they are, it could mean that Location Labs improperly filed its second petition for inter partes review with the United States Patent and Trademark Office.  (*See* 2/6/2015 Joint Letter, ECF No. 63 at 3 n.2 (citing 35 U.S.C. § 315(b)).)  Callwave says that Location Labs's and AT&T's discussions about the scope of indemnification and their relative responsibilities are likely to show privity-related facts.  Callwave also says that it has not been able to get information about this issue in the pending *inter partes review* proceedings, which allow for only limited discovery.

ORDER
C 14-80112 JSW (LB)

8

The court does not believe that Callwave has met its burden to demonstrates a "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). As Location Labs points out, Callwave fails to acknowledge "the numerous documents regarding the indemnification agreement between AT&T and Location Labs [that] have already been produced to Callwave, including the indemnification agreements and all correspondence between Location Labs and [AT&T] prior to the date Location Labs accepted the defense." (2/6/2015 Joint Letter, ECF No. 63 at 6.) Indeed, nowhere in its section of the parties' letter does Callwave say that these already-produced documents do not bear upon the privity issue. Perhaps this is because saying so would undercut its other argument—that the six documents listed on the privilege log "likely" contain facts showing privity. If the indemnification-related documents already produced do not bear upon the privity of Location Labs and AT&T, then the documents Location Labs listed on the privilege log likely do not either. But if the indemnification-related documents already produced do bear upon the privity of Location Labs and AT&T, then Callwave would not have a substantial need for the documents protected by the attorney work-product doctrine. On this record, then, the court concludes that Callwave has met its burden to overcome Location Labs's assertion of the attorney work-product doctrine for the six documents that Location Labs listed on its privilege log. Location Labs will not be required to produce them to Callwave.

## CONCLUSION

For the reasons describe above, the court denies Callwave's request for an order requiring Location Labs to produce the six documents that it identified on the privilege log that it provided to Callwave on January 20, 2015.

**IT IS SO ORDERED.**

Dated: February 23, 2015

_____
LAUREL BEELER
United States Magistrate Judge